IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GREGORY WARREN,                           §
                                          §
            Plaintiff,                    §
                                          §
V.                                        §        No. 3:14-cv-1038-BN
                                          §
CAROLYN W. COLVIN,                        §
Acting Commissioner of Social Security,   §
                                          §
            Defendant.                    §

## MEMORANDUM OPINION AND ORDER

Plaintiff Gregory Warren seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is reversed and remanded.

### Background

Plaintiff alleges that he is disabled due to musculoskeletal disorders which result in severe pain in his back and legs. *See* Dkt. No. 11-7 at 6. After his application for disability benefits was denied initially, *see* Dkt. No. 11-5 at 2-9, and on reconsideration, *see id.* at 15-18, Plaintiff requested a hearing before an administrative law judge ("ALJ"), *see id.* at 23-24. That hearing was held on August 14, 2012. *See* Dkt. No. 11-3 at 33-52. At the time of the hearing, Plaintiff was 42 years old. *See* Dkt. No. 11-3 at 23; Dkt. No. 11-7 at 2. He completed the eleventh grade, obtained a GED, and has past work experience as a dairy manager, frozen food manager, and drill bit repairperson. *See* Dkt. No. 11-3 at 41; Dkt. No. 11-7 at 6-7. Plaintiff has not engaged in substantial gainful activity since April 27, 2010. *See id.*

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See* Dkt. No. 11-3 at 24. Although the medical evidence established that he suffered from musculoskeletal disorders, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 18. The ALJ further determined that Plaintiff had the residual functional capacity to perform sedentary work. *See id.* at 18, 23.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed. *See id.* at 2-4.

Plaintiff then filed this action in federal district court. *See* Dkt. No. 1. Plaintiff challenges the hearing decision on four grounds: (1) the ALJ's determination that his impairments did not meet a listing was not supported by substantial evidence; (2) the findings that Plaintiff had the residual functional capacity to perform sedentary work is not supported by substantial evidence; (3) the ALJ failed to give proper consideration to Plaintiff's treating chiropractor's opinion; and (4) the ALJ neglected to consider all of Plaintiff's severe impairments.

For the reasons explained below, the hearing decision is reversed, and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014);

*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that

the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

<u>Step Three Analysis</u>

Plaintiff first contends that the ALJ erred by concluding that Plaintiff did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments," *see* Dkt. No. 11-3 at 18, without providing any explanation of why he made the adverse determination, *see* Dkt. No. 16 at 10-13.

At Step Three of the sequential evaluation process, the ALJ considers whether a claimant has an impairment or combination of impairments that meets or equals a listed condition. *See* 20 C.F.R. § 404.1520(d). By statute, the ALJ is required to discuss

the evidence offered in support of a claimant's application and to explain why he or she finds the claimant not to be disabled at each step. *See Audler*, 501 F.3d at 448. Where the ALJ has offered nothing to support a conclusion at Step Three, the Court cannot determine whether the decision is based on substantial evidence. *See id.* "[A] summary conclusion that a claimant fails to meet or equal the criteria of an unspecified listing is insufficient because it does not permit meaningful judicial review." *Dunn-Johnson v. Comm'r of the Soc. Security Admin.*, No. 3:10-cv-1826-BF, 2012 WL 987534, at *6 (N.D. Tex. Mar. 22, 2012) (citing *Audler*, 501 F.3d at 448). But the Court is not required to remand a case due to this legal error unless the claimant's substantial rights have been affected. *See id.* (citing *Audler*, 501 F.3d at 448 & *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

Here, the ALJ did not identify any listed impairment for which Plaintiff's symptoms failed to qualify, nor did he provide any explanation as to how he reached the conclusion that Plaintiff's symptoms were not sufficiently severe to meet any listed impairment. He simply stated that "the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)." Dkt. No. 11-3 at 18. The ALJ's Step Three analysis is insufficient under *Audler*. *See Dunn-Johnson*, 2012 WL 987534, at *6.

Plaintiff contends that he meets Listing 1.04, relating to disorders of the spine, for purposes of the Step Three analysis. *See* Dkt. No. 16 at 11-12. Plaintiff asserts that he established disability under the section A of the Listing. To meet Listing 1.04, a

claimant must first establish a severe diagnosed spinal disorder "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. pt. 404, subpt. P., app. 1 § 1.04. In addition to the diagnostic component, a claimant must satisfy one of Listing 1.04's three subparts, 1.04A, 1.04B, or 1.04C – that is, the severity component. Each subpart describes different criteria that, if satisfied, prove the claimant's diagnosed spinal disorder is also severe enough to satisfy the Listing. To meet the criteria of Listing 1.04A, the record must contain sufficient evidence of (a) "nerve root compression characterized by neuro-anatomic distribution of pain," (b) "limitation of motion of the spine," (c) "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," and (d), "if there is involvement of the lower back, positive straight-leg raising test." 20 C.F.R., pt. 404, subpt. P, app. 1 § 1.04A.

Evidence of motor loss includes muscle weakness or atrophy. *See, e.g., Pannell v. Astrue*, No. 3:11-cv-2385-D, 2012 WL 4341813, at *4 (N.D. Tex. Sept. 21, 2012) ("motor loss (as shown by muscle weakness)"); *Davis v. Astrue,* No. 08-411, 2009 WL 2408175, at *3 (S.D. Tex. Aug. 3, 2009) (Listing 1.04A was not met where "the record did not contain evidence of any motor or reflex loss or atrophy, and in fact the evidence indicated 'muscle strength is 5/5 in the lower extremities. That is, no weakness. Hand grip is good. No muscle atrophy was noted.'"). Evidence of sensory loss includes numbness and paresthesia. *See Strong v. Astrue*, No. 10-1406, 2011 WL 7394717, at *4 (W.D. La. Dec. 23, 2011) ("numbness" constitutes evidence of "[s]ensory and reflex loss"); *Williams v. Astrue,* No. 09-130, 2010 WL 989216, at *4 (W.D. La. Mar. 15, 2010) ("parasthesia or sensory loss"); *Morris v. Astrue,* No. 4:07-cv-547-A, 2008 WL 4791663,

at *2 (N.D. Tex. Oct. 24, 2008) (plaintiff was not disabled at step three where his doctor "reported no issues with sensory loss, reflex changes, muscle spasms, muscle atrophy, or muscle weakness, all of which are objective signs included in Listing 1.04"); *Stephens v. Sullivan*, 792 F. Supp. 566, 570 (S.D. Ohio 1992) (objective evidence of "positive neurological findings" include "muscle spasm or atrophy, sensory loss, or reflex deficits").

Plaintiff has the burden of proof at Step Three of the sequential evaluation process. *See Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994). Here, Plaintiff contends that:

> The MRI of the lumbar spine performed May 11, 2010 revealed a 5 mm disc protrusion at L4-5, impinging upon the L5 nerve root and the exiting L4 nerve root bilaterally (Tr. 437). The evidence has consistently shown decreased range of motion of the lumbar spine (Tr. 215, 229, 241, 271, 286, 308, 402, 464, 470). The Plaintiff has been found to have muscle weakness (Tr. 241, 308, 334, 391, 403), reflex loss (Tr. 241, 271, 286, 308, 466, 470), sensory loss (Tr. 391, 403) and positive straight leg raising (Tr. 402, 470). Further, Mr. Warren has been consistently observed to walk with an antalgic gait, in a bent forward position (Tr. 229, 240, 241, 271, 308, 334, 470). Accordingly, the evidence demonstrates that Mr. Warren's condition satisfies all the requirements set forth in Section 1.04 of the Commissioner's listed impairment.
>
> * * *
>
> In the instant action, the Plaintiff also has set forth all of the requirements of Section 1.04A. Dr. Weddle, the treating specialist, has opined that the Plaintiff cannot stand more than 15 minutes at a time or sit more than 30 minutes at a time, needs to elevate his legs during an 8 hour workday, requires a four-point cane for ambulation and would need frequent unscheduled interruptions of work routine to leave the work station to alleviate pain (Tr. 493-494).

Dkt. No. 16 at 11-12.

But, as the Commissioner observes, the May 2010 MRI revealing impingement on the L5 nerve root was taken prior to his August 2010 surgery, and none of the other evidence in the record – including a February 2011 x-ray of the lumbar spine – revealed compromise of a nerve root or the spinal cord or spinal canal stenosis. *See* Dkt. No. 17 at 12. Moreover, the ALJ cited medical evidence indicating that, by June 2011, Plaintiff's ambulation was somewhat antalgic but that there were no neurological changes and that, in a September 2011 report, Plaintiff did not demonstrate any definite motor weakness. *See* Dkt. No. 11-3 at 21. The only evidence Plaintiff cites to establish sensory loss is a May 12, 2010 report by Dr. Charles E. Willis, II that indicated that, just weeks after the workplace injury, Plaintiff exhibited "decreased sensation right lower extremity L4 distribution." Dkt. No. 11-10 at 28.

The record before the Court, therefore, does not include evidence to establish that Plaintiff met the requirements of Listing 1.04 for a continuous period of "not less than twelve months." That is, the most that the evidence cited by Plaintiff shows is that he met Listing 1.04A in May 2010 – shortly after his injury – when the MRI showed nerve root impingement and Dr. Willis noted sensory loss. But, by February 2011, there was no such compromise of a nerve root or the spinal cord, and no other evidence cited by Plaintiff shows decreased sensation after May 2010. There is insufficient evidence to show that Plaintiff's impairment lasted at least twelve months and meets Listing 1.04's duration requirement. *See Hong v. Astrue*, No. H-11-1697, 2012 WL 9391968, at *9-*10 (S.D. Tex. July 3, 2012), *rec. adopted*, (S.D. Tex. July 31, 2012) (concluding that Listing 1.04 was not met when claimant's impairments were not of sufficient severity throughout the relevant time period to meet the requirements of

Listing 1.04A); *see also Carillo v. Astrue,* No. SA-09-CA-44-XR, 2010 WL 2136438, at *5 (W.D. Tex. May 26, 2010) (same). Any perceived error by the ALJ in failing to explain the basis for an adverse finding at Step Three is therefore harmless.

Accordingly, Plaintiff has not established that the ALJ's Step Three error affected Plaintiff's substantial rights and requires remand.

Residual Functional Capacity and Weighing Opinion of Treating Specialist

Plaintiff next contends that the ALJ's determination that Plaintiff can perform a limited range of sedentary jobs is unsupported by substantial evidence and is the result of medical speculation by the Commissioner. *See* Dkt. No. 16 at 13-14. He particularly faults the ALJ for failing to give adequate consideration to the State Agency Medical Consultant's opinion that Plaintiff can perform only a restricted range of light work and entirely rejecting the opinion of Dr. Bryan Weddle, who had extensive contact with Plaintiff through chiropractic treatment.

The Court must determine whether substantial evidence supports the ALJ's findings. Concluding that the ALJ's findings were not supported by substantial evidence would be "appropriate only if no credible evidentiary choices or medical findings supported the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal quotation marks omitted).

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the claimant's] case record." *Spellman v. Shalala,* 1 F.3d 357, 364 (5th Cir. 1993); 20 C.F.R. § 404.1527(d)(2). A treating source is a claimant's "physician, psychologist, or other acceptable medical source" who provides or has provided a claimant with medical treatment or evaluation and who has or has had an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. A treating source opinion cannot be rejected absent good cause for reasons clearly articulated in the hearing decision. *See Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir. 2001). Chiropractors are considered "other" sources of information that may be used to "show the severity of an impairment and how it affects the claimant's ability to work." 20 C.F.R. § 416.913(d). The relevant regulations accord less weight to chiropractors than to medical doctors. *See Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (citing 20 C.F.R. § 404.1513(e)).

The ALJ is not bound by the state agency physician's opinions, but he may not ignore them and must explain in his decision the weight given to those opinions. *See Lockridge v. Colvin,* No. 3:12-cv-4135-BN, 2014 WL 1255745, at *8 (N.D. Tex. Mar. 27, 2014) (citing SSR 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996)); *see also Helbing v. Astrue*, No. 4:11-cv-704-Y, 2012 WL 6719469, at *12 (N.D. Tex. Oct. 29, 2012), *rec. adopted*, 2012 WL 6709666 (N.D. Tex. Dec. 27, 2012).

Here, the ALJ did not reject the medical opinions of any treating source. Instead, he considered the evidence in the record and determined based on that record that Plaintiff has the residual functional capacity to perform sedentary work. *See* Dkt. No. 11-3 at 18. The determination of residual functional capacity is the sole responsibility of the ALJ, *see Taylor v. Astrue,* 706 F.3d 600, 602-03 (5th Cir. 2012), and the ALJ

considers all relevant medical and other evidence in making the RFC determination, *see* 20 C.F.R. § 404.1545(a)(3); SSR 96-5, 1996 WL 374183, at *5. Such a finding does not constitute an improper medical opinion by the ALJ but instead an assessment of Plaintiff's capacity to work based on all of the evidence in the case record. The ALJ therefore is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded in part by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

The ALJ summarized the medical evidence, *see* Dkt. No. 11-3 at 20, and concluded that "the medical history and other evidence does not entirely substantiate the intensity and persistence of pain as alleged by the claimant nor the effect the impairments have on the claimant's ability to work. The claimant's testimony as to the subjective complaints and functional limitations is neither entirely credible nor consistent with the evidence of record, in accordance with SSR 96-7p." *Id.* at 21. The ALJ explained that

- the evidence did not support Plaintiff's allegations that he cannot perform work activity due to physical pain and fatigue, since there is no documentation of any psychological problems and no evidence of disabling physical pain;

- state agency evaluations found that Plaintiff could perform light exertion, and medical evidence showed no neurological changes;

- a September 2011 report stated that Plaintiff did not demonstrate any motor weakness and needed to wait three to four months to see if the spinal cord stimulator is successful;

- Dr. Weddle's report was given little weight because it is inconsistent with the evidence as a whole and with the reports of no neurological changes and no motor weakness; because Dr. Weddle, as a chiropractor, is not a "medical source"; and because the report "is based on exaggerated self-reports from the claimant"; and

- Plaintiff walks, drives, can handle the finances, can go out alone, spends time with others talking and playing cards, can follow instructions, and does not need reminders but has a poor work history and does not have the motivation to work.

*Id.* at 21-22.

The problem with the ALJ's RFC determination is, as Plaintiff argues, that the ALJ rejected any medical opinion addressing or touching on Plaintiff's condition's effect on her ability to work and "[t]he ALJ never referred to any specific evidence to suggest why, with regard to any particular functional ability, [Plaintiff] either had more functional capacity than was estimated by his treating chiropractor or less functional capacity than was estimated by the State Agency reviewing physicians." Dkt. No. 18 at 4. While the ALJ may choose to reject medical sources' opinions, he cannot independently decide the effects of Plaintiff's mental impairments on his ability to perform work-related activities, as that is prohibited by *Ripley*, 67 F.3d at 557-58, even if the ALJ believes he is simply giving Plaintiff the benefit of the doubt as to what limitations might apply. Rather, at that point, it became incumbent upon the ALJ to obtain an expert medical opinion about the types of work tasks that Plaintiff could still perform given his impairments. *See id.* at 557. The Court therefore "cannot agree that

14

the evidence substantially supports the conclusion that [Plaintiff] was not disabled because [the Court is] unable to determine the effects of [Plaintiff's] conditions ... on [Plaintiff's] ability to perform ... work." *Id.* at 557 n.27; *cf. Williams v. Astrue*, 355 F. App'x 828, 831–32 (5th Cir. 2009) (reversing and remanding where the ALJ rejected the opinions of the claimant's treating physicians and relied on his own medical opinions as to the limitations presented by the claimant's back problems in determining RFC).

Because a remand is required based on the ALJ's error in determining Plaintiff's RFC, the Court need not reach, and expresses no opinion, on Plaintiff's remaining arguments that the ALJ improperly failed to recognize obesity as one of his severe impairments and consider that disability and Plaintiff's reliance on a four-pronged cane in evaluating his residual functional capacity. *See* Dkt. No. 16 at 16-17.

## Conclusion

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

SO ORDERED.

DATED: December 15, 2014

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE